[Crim. No. 8990. Second Dist., Div. One. Dec. 1, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD ELMER CURTIS et al., Defendants and Appellants.

## COUNSEL

David N. Rakov, under appointment by the Court of Appeal, for Defendants and Appellants.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Russell Iungerich, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

LILLIE, Acting P. J.—In 1963 a jury found Curtis and West guilty on count I of kidnaping one Charles and Mrs. Carter for the purpose of robbery (§ 209, Pen. Code) and on count II, of first degree robbery (§ 211, Pen. Code); it further found that there was no bodily harm as a result of

the kidnaping, and both defendants were armed at the time of the commission of the offenses. Curtis admitted to be true the allegation that he had suffered a prior felony conviction (§ 11530, Health & Saf. Code). Defendants appealed from the judgment of conviction but subsequently abandoned the appeal, and the same was dismissed at their request. On defendants' application to recall remittitur the California Supreme Court on May 28, 1971, transferred the cause to this court to recall remittitur, vacate order dismissing the appeal, appoint counsel and determine the appeal in light of *People* v. *Daniels*, 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], *People* v. *Mutch*, 4 Cal.3d 389 [93 Cal.Rptr. 721, 482 P.2d 633], and *People* v. *Timmons*, 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648]. Such order was issued by this court on June 18, 1971.

On November 14, 1962, between 9 and 10 p.m. Charles was driving with Mrs. Carter on Arlington; as he approached the intersection with Adams he stopped for a red traffic light whereupon Curtis walked up to the driver's side and West to the passenger's side; through the open window on the driver's side Curtis asked Charles "where is Adams"; Charles replied, "Fellow, that's Adams here"; Curtis then said, "Shut your damn mouth," and pointed a black automatic pistol, either a .32 or .25, at the bridge of his nose between his eyes; West got into the rear, and Curtis told Charles to get over, pushed him over to Mrs. Carter, got into the driver's seat and drove Charles' car about five blocks to a deserted "dark place" where the freeway was under construction; there were no houses, buildings, or other persons in the area. Curtis stopped the car, then instructed West to search Mrs. Carter; West did so, running his hands over her, through and under her clothing. Meanwhile all of Charles' clothes were "pulled off" and he was "stripped buck naked"; his clothing and billfold were searched, all of his cards and papers were thrown on the floor of the car and a $20-bill was taken from him. Defendants warned, "Don't look back or you'll get your damn brains blown out," and ran away across the back of the car. Charles drove off naked to 23d Street where he found a police car. At all times Curtis pointed the automatic at Charles even while he drove the car and during the time defendants searched him and Mrs. Carter.

Defendants denied that they had ever seen Charles or Mrs. Carter and presented an alibi defense.

■ Relying on *People* v. *Daniels*, 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225], and *People* v. *Timmons*, 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], appellants contend that the movements of the victims were merely incidental to the commission of the robbery and do not substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself, thus the kidnaping convictions must be reversed.

In *Daniels* the movement of the victims was from 5 to 30 feet. The court concluded "that the brief movements which defendants Daniels and Simmons compelled their victims to perform in furtherance of robbery were merely incidental to that crime ánd did not substantially increase the risk of harm otherwise present. Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short, cannot reasonably be found to be asportation 'into another part of the same county.' . . ." (P. 1140.)

Contrary to appellants' claim, *People* v. *Timmons,* 4 Cal.3d 411 [93 Cal.Rptr. 736, 482 P.2d 648], is not "on all fours" with the instant case and is clearly distinguishable. Around 11:15 a.m. market employees, Baird and Miss Stephens, parked in a market parking lot with several bags of cash they had just gotten from the bank; defendant approached them, said it was a holdup, got into the car and directed Baird to drive out of the lot; Baird drove about five blocks; while the car was in motion defendant took the money then ordered Baird to stop, opened the door and got out. The court held that the movement was incidental to the commission of the robbery since the car was the moving situs of the robbery, and that it did not substantially increase the risk of harm beyond that inherent in the underlying crime. (P. 414.) Referring to *People* v. *Ramirez,* 2 Cal. App.3d 345 [82 Cal.Rptr. 665], in which defendant's companion drove the car while defendant attempted to rape the victim and upon police pursuit recklessly operated the vehicle until it crashed killing him, the court said at page 415: "In sharp contrast, here Baird and Miss Stephens simply drove their own car for some five blocks along a city street in broad daylight, while Timmons accomplished the robbery and proceeded to the rendezvous with his accomplice. The police were not in hot pursuit, and there was no high-speed chase and consequent reckless driving. On the contrary, it was to Timmons' advantage that the car be driven as innocuously as possible so as to attract no attention from passersby. Neither victim observed any weapon in Timmons' possession, and the court found he was not armed. As noted above, neither victim suffered any harm whatever." (P. 415.) However, at this point the court noted: "To avoid misunderstanding, we reiterate that in a different set of circumstances a movement of five city blocks might well 'substantially' increase the risk and thereby expose the robber to a prosecution for kidnaping." (Fn. 2, p. 416.) We have such a set of circumstances here.

Curtis was armed with an automatic revolver which at all times he pointed at Charles; instead of the broad daylight found in *Timmons*

defendants approached Charles and Mrs. Carter at night between 9 and 10 o'clock; the victims were accosted at a well lighted intersection of two main thoroughfares; both defendants forced their way into the car, Curtis shoving Charles toward Mrs. Carter and West entering the rear; Curtis drove the vehicle approximately five blocks to a deserted "dark place" where a freeway was under construction and there were no other persons, houses or buildings in the vicinity; Charles' clothing was "pulled off" and he was robbed under threat of an automatic pistol, and Mrs. Carter's body and clothing were searched; finally, as defendants left they warned their victims "Don't look back or you'll get your damn brains blown out." A parallel situation is found in *People* v. *Miller,* 12 Cal.App.3d 922 [91 Cal. Rptr. 97]. In rejecting defendants' contention that the kidnaping was only incidental to the rape and robbery, the court said at pages 933-934: "It must reasonably be said that the forcible movement of Miller's victims from well traveled city intersections to more remote areas where his conduct would be unobserved, was not *merely* incidental to his plan to rape and rob. Such asportation was an important part of his criminal objective; without it the crimes would not have been committed, for obviously the rapes and robberies would not have occurred at the point where the girls entered the automobile or in the near vicinity. The risk of harm to the victims before their asportation was slight. Such risk was 'substantially increased' by their movement to secluded spots where violence 'above that necessarily present' in the intended crimes would probably go undetected."

Here the asportation of Charles and Mrs. Carter to a dark, deserted spot under the freeway substantially increased the risk of harm to them over and above that necessarily present in the crime of robbery itself. It is true the jury found there was no bodily harm as a result of the kidnaping but it is fairly obvious that defendants had not only the means of inflicting serious injury, even death, but the perfect place in which to do it, and the risk of harm to which the victims were subjected in the event defendants were frustrated in their criminal act was substantial and very real.

Changes in the criminal law since 1963, however, compel us to modify the judgments in the following particulars. As to Ronald Elmer Curtis, the judgment is modified by adding after "It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the State Prison for the term prescribed by law, on said Counts. Sentences as to Counts 1 and 2 are ordered to run CONCURRENTLY with each other." the following, "Execution of sentence on Count 2 is stayed, said stay to become permanent upon completion of the sentence on Count 1." As to Alfred West, the judgment is modified by deleting the following,

"and that defendant was armed as alleged in each count"; and by adding after "It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the State Prison for the term prescribed by law, on said Counts. Sentences as to Counts 1 and 2 are ordered to run CONCURRENTLY with each other." the following "Execution of sentence on Count 2 is stayed, said stay to become permanent upon completion of the sentence on Count 1." In all other respects the judgments are affirmed.

Thompson, J., and Clark, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 26, 1972.