Filed 5/16/16 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| In re EZEKIEL JOHNSON, on Habeas Corpus. | A145625<br><br>(Contra Costa County<br>Super. Ct. No. 05-0417568)<br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |
| --- | --- |

THE COURT:

It is ordered that the opinion filed herein on April 19, 2016, be modified as follows:

On page 9, in the middle of footnote 2, following the word "retroactivity," the sentence beginning "We do note that the only habeas corpus case" is deleted, including the citation and quotation from the citation ending with the word "degree"; the word "However" is deleted, and the words "We do note" should be added in its place, so that footnote 2 is thus modified to read in its entirety as follows:

Respondent appears to concede that *Chiu* applies retroactively to petitioner's conviction without expressly addressing the issue. In its reply brief, respondent acknowledges: "To the extent that petitioner is arguing that his liability for first degree murder should be determined taking into account *Chiu*'s construction of the scope of that liability, we agree." (Fn. omitted.) We also agree, and based on this concession, we need not discuss at length the issue of retroactivity. However, in slightly different contexts courts have given retroactive effect to Supreme Court decisions effecting similar changes in substantive criminal law. (See *In re Lucero*

1

(2011) 200 Cal.App.4th 38 (*Lucero*); *In re Hansen* (2014) 227 Cal.App.4th 906 (*Hansen*).)

There is no change in the judgment.

DATED: _____           _____
                                                          RUVOLO, P. J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re EZEKIEL JOHNSON,<br><br>      on Habeas Corpus. | A145625<br><br>(Contra Costa County<br>Super. Ct. No. 05-0417568) |

## I.

## INTRODUCTION

This case presents petitioner Ezekiel Johnson's second appellate challenge to his conviction for first degree murder. Petitioner contends his conviction is no longer valid after the Supreme Court's decision in *People v. Chiu* (2014) 59 Cal.4th 155 (*Chiu*), which held that an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. The primary question before us is whether petitioner is entitled to have his conviction reversed where he has not shown as a matter of law that the jury based its verdict on the natural and probable consequences theory of aiding and abetting now invalidated by our Supreme Court. We answer this question in the affirmative, and therefore grant the petition for writ of habeas corpus.

## II.

## BACKGROUND

### A.    **Johnson I**

In petitioner's first appeal, *People v. Johnson* (2009 Cal.App.Unpub. LEXIS 3365) (*Johnson I*)), we affirmed petitioner's conviction for first degree murder (Pen.

Code, [1] § 187), and conspiracy to commit assault with force likely to cause bodily injury (§§ 182, subd. (a)(1), 245, subd. (a)(1)). We struck a 10-year consecutive term for a gang enhancement pursuant to section 186.22, subdivision (b)(1).

### 1. Factual and Procedural Backgrounds in *Johnson I*

We summarize the facts largely from those set forth in *Johnson I*.

Neal Fiu and four teenage members of the street gang Sons of Death (SOD) (Daniel G., Joey O., Sammy V., and Brandon V.) were on Fiu's front porch near the corner of South 15th Street and Maine Avenue in Richmond, drinking alcohol. Petitioner had previously been seen at that corner conducting transactions that appeared to be drug sales, and he had been accessing a trash can where Fiu kept drugs at his house. Petitioner and two other men who were present, Javier Cervantes (Javi) and Juan Cervantes (Juan), appeared to be affiliated with the "15th Street" gang that hung out near the corner of 15th Street and Maine Avenue. Petitioner was not a member of the SOD gang.

While Fiu, the teenagers, Juan, and Javi were sitting on the front porch, Salvador Espinoza walked past, yelled the name of a gang (EHL, or Easter Hill Locos), and threw a gang sign. Taking this as a challenge, the four teenagers and Fiu approached Espinoza, and they started fighting. Danny G. pulled out a .38-caliber weapon, said "SOD," and aimed the gun at Espinoza's face. Fiu pulled down Danny G's hand, and said to beat up Espinoza instead. Espinoza tried to escape, but Brandon V. caught him and threw him to the ground. The teenagers, Juan, Javi, and Fiu punched and kicked Espinoza in the head and body until he lost consciousness. The group left Espinoza lying on the ground, apparently still alive, and everyone returned to the porch to continue drinking.

After the group returned to the porch, petitioner arrived by car. He started talking to Fiu and the teenagers, who told him that they had beaten up the victim, and that he was lying on the ground nearby. After petitioner asked whether the victim was "EHL," petitioner said he wanted to kill Espinoza, but Fiu told him to leave him (Espinoza) alone. Petitioner left the house and went with the teenage gang members to where Espinoza was

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2

lying on the ground. Petitioner kicked and hit Espinoza. Petitioner asked for a gun so that he could kill Espinoza, but no one in the group had a gun. Petitioner got a milk crate, put it over Espinoza's neck, and jumped on it at least twice. Finally, both petitioner and Joey O. (at petitioner's direction) stabbed Espinoza in the neck.

A forensic pathologist testified that Espinoza died from the multiple blunt injuries to his head. His injuries did not cause his death immediately, and therefore the pathologist could not determine if the first or second beating resulted in his death. The injuries could have been from kicks, blows, or the milk crate. He did identify injuries (extensive bruises and cuts) on Espinoza's face and neck that were consistent with having been caused by a plastic milk crate. He also confirmed that the knife wounds to Espinoza's neck did not cause his death.

Petitioner was charged by information with murder (§ 187) and conspiracy (§ 182, subd. (a)(1)) to commit two crimes (the sale of narcotics (Health & Saf. Code, § 11379) and the commission of assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)). The information included two enhancements for personal use of a deadly weapon (§ 12022, subd. (b)(1)), alleging that petitioner personally used a knife and a milk crate in connection with the murder. The information also alleged that petitioner committed both charged crimes for the benefit of a street gang (§ 186.22, subd. (b)(1)), and that he had suffered a prison prior (§ 667.5, subd. (b)).

Petitioner was prosecuted for first degree murder under various theories. First, the prosecution contended that petitioner was the actual perpetrator of a premeditated and deliberate murder, as supported by the evidence that he stated that he wanted to kill the victim before he participated in the beating death. The prosecutor also argued that petitioner was guilty of first degree murder if jurors found that he aided and abetted an assault with force likely to cause great bodily injury, and that first degree murder was a natural and probable consequence of the assault. A third (and related) alternative presented to the jury was that petitioner was guilty if jurors found that he joined a conspiracy to assault the victim, and that murder was the natural and probable consequence of the conspiracy.

3

At trial, the jury was instructed as to the definition of aiding and abetting (CALJIC No. 3.01) and conspiracy liability (CALJIC Nos. 6.10.5, 6.11, 6.12). Jurors also were instructed pursuant to CALJIC No. 3.02, which, as modified in this case, provided: "One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted. [¶] In order to find the defendant guilty under this principle of the crime of murder as charged in Count One, or the lesser included crimes of attempted murder or manslaughter, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of assault with force likely to cause great bodily injury was committed; [¶] 2. That the defendant aided and abetted that crime, that is the crime of assault with force likely to cause great bodily [injury]; [¶] 3. That a co-principal in that crime committed the crime of murder, attempted murder or manslaughter, depending on which one is at issue; and [¶] 4. That such crime was a natural and probable consequence of the commission of the crime of assault with force likely to cause great bodily injury. [¶] In determining whether a consequence is a natural—is natural and probable you must apply an objective test based not on what the defendant actually intended, but on what a person of reasonable and ordinary prudence would have expected likely to occur. The issue is to be decided in light of all the circumstances surrounding the incident. [¶] A natural consequence is one which is within the normal range of outcomes that may be reasonably expected to occur if nothing unusual has intervened. [¶] 'Probable' means likely to happen. [¶] You are not required to unanimously agree as to which originally contemplated crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target, and that the crime of murder or attempted murder or manslaughter, depending upon which one was at issue, was a natural and probable consequence of the commission of that target crime."

In closing argument, the prosecutor discussed the natural and probable consequences theory. The prosecutor explained petitioner aided and abetted the murder

4

of Espinoza.  The prosecutor then argued: "Natural and probable consequences is another theory.  An aider and abettor is guilty of any other crime also which is a natural and probable consequence of the crime originally contemplated.  [¶] So, in that situation, if the Sons of Death were only planning on assaulting Salvador Espinoza with force likely to cause great bodily injury and you find in that drunken frenzied beating that it was natural and probable that they were gonna get carried away and Salvador Espinoza could get killed, and you find that Ezekiel Johnson aided and abetted, he's liable for the murder in that situation.  [¶] He doesn't get off the hook."

In his rebuttal argument, the prosecutor again discussed the natural and probable consequences theory of aiding and abetting: "And if the natural and probable consequences of acts of another result in murder, the defendant is liable for that act."

The jury found petitioner guilty of first degree murder.  Jurors also found him guilty of conspiracy to commit assault with force likely to cause great bodily injury.  (The jury declined to find that petitioner conspired to sell narcotics.)  The jury also found true the allegations that the offenses were committed for the benefit of a street gang.  Jurors found not true each of the allegations that petitioner personally used a deadly and dangerous weapon (a knife and a milk crate).

## 2.  Issues on Appeal in *Johnson I*

Petitioner raised several issues in his first appeal, but we will only summarize the issue relevant to his current petition: his relevant challenge there was insufficient evidence to support his conviction for premeditated and deliberate first degree murder under any theory of culpability.  As noted, the prosecutor argued that petitioner was guilty of first degree murder if he aided and abetted an assault with force likely to cause great bodily injury, as first degree murder was a natural and probable consequence of that assault.  Petitioner argued his conviction could not be sustained under the natural and probable consequences doctrine because first degree murder was not a reasonably foreseeable consequence of the second attack on Espinoza.  We disagreed, noting that the jury heard that petitioner went to the unconscious victim and began hitting and kicking him.  Petitioner asked for a gun so he could kill the victim and then put a milk crate on

5

the victim's neck and jumped on it. He also stabbed the victim in the neck. From this evidence, the jury could conclude it was reasonably foreseeable that premeditated first degree murder would be the natural and probable consequence of the second attack on Espinoza.

In a footnote, we stated: "Respondent does not address whether there was sufficient evidence to support a first degree murder conviction under the natural and probable consequences doctrine. The Attorney General argues instead that because defendant 'expressed an intent to kill the victim, a sufficiency of the evidence analysis need not rely on natural and probable consequences.' Respondent later argues, in connection with defendant's challenge to related jury instructions . . . , that defendant's first degree murder conviction was 'not based on the natural and probable consequences doctrine at all,' and that because the jury found that defendant intended to kill the victim, 'the question whether murder was a natural and probable consequence of assault is beside the point.' Jurors were asked to determine whether defendant was guilty of murder, and, if so, to determine the degree; the jury verdict form does not indicate the theory of guilt upon which jurors relied. *Because jurors were instructed on the natural and probable consequences doctrine, and because the prosecutor highlighted this theory during his closing argument, we cannot say that jurors did not rely on the doctrine in finding defendant guilty of first degree murder.*" (*Johnson I*, *supra*, at *49-51, fn. 19.)

## III.

## DISCUSSION

**A.** *Exercise of Original Jurisdiction to Resolve the Habeas Petition*

Petitioner has filed the instant habeas petition without first seeking relief in the trial court. Respondent raises no objection to this court exercising original jurisdiction.

"It has long been the law in California that, while a Court of Appeal may have original jurisdiction in a habeas corpus proceeding, it has the discretion to deny a petition without prejudice if it has not been first presented to the trial court." (*In re Kler* (2010) 188 Cal.App.4th 1399, 1403.) " 'Generally speaking, habeas corpus proceedings involving a factual situation should be tried in superior court rather than in an appellate

6

court, except where only questions of law are involved.'. . ." (*In re of Hillery* (1962) 202 Cal.App.2d 293, 294, quoting 24 Cal.Jur.2d, Habeas Corpus, § 68, pp. 524-525; *In re Davis* (1979) 25 Cal.3d 384, 389 [exercising original jurisdiction where the petitions raised issues of law and there were no material factual issues].)

The habeas petition raises a legal issue that does not require any further factual development. The legal argument is largely dependent upon our appellate opinion in *Johnson I*. Further, petitioner argues this court is more experienced in determining prejudice than the superior court and the primary issue here is the proper harmless error analysis. We, therefore, elect to exercise our jurisdiction to resolve the writ petition.

## B.   *The* **Chiu** *Decision*

In *Chiu*, the Supreme Court announced: "We now hold that an aider and abettor may not be convicted of first degree *premeditated* murder under the natural and probable consequences doctrine." (*Chiu*, *supra*, 59 Cal.4th at pp. 158-159, original italics.) A conviction of premeditated murder must be based on direct aiding and abetting principles. (*Id.* at p. 159.)

Chiu was involved in a fight with a group of teenagers outside a pizzeria. The evidence showed Chiu went to the pizzeria specifically to witness or to participate in the fight, and he asked a friend if he wanted to "see someone get shot." (*Chiu*, *supra*, 59 Cal.4th at p. 159.) During the fight, one witness testified that Chiu told his friend, Che, to grab the gun. (*Id.* at p. 160.) Che pointed the gun at the victim and when he hesitated, Chiu yelled "shoot him." (*Ibid.*)

Chiu was charged with murder pursuant to section 187, subdivision (a), a gang enhancement and firearm allegations. (*Chiu*, *supra*, 59 Cal.4th at p. 160.) At trial, the prosecution set forth two theories of liability: (1) Chiu was guilty of murder because he directly aided and abetted Che in the shooting of the victim; or (2) Chiu was guilty of murder because he aided and abetted Che in the target offense of assault or of disturbing the peace, the natural and probable consequence of which was murder. (*Ibid.*) The jury found Chiu guilty of first degree murder and found both the gang enhancement and firearm allegations to be true. (*Id.* at p. 161.)

7

The Supreme Court stated: "We have not previously considered how to instruct the jury on aider and abettor liability for first degree premeditated murder under the natural and probable consequences doctrine." (*Chiu*, *supra*, 59 Cal.4th at p. 162.) It then concluded:

"[W]e hold that punishment for second degree murder is commensurate with a defendant's culpability for aiding and abetting a target crime that would naturally, probably, and foreseeably result in a murder under the natural and probable consequences doctrine. We further hold that where the direct perpetrator is guilty of first degree premeditated murder, the legitimate public policy considerations of deterrence and culpability would not be served by allowing a defendant to be convicted of that greater offense under the natural and probable consequences doctrine." (*Chiu*, *supra*, 59 Cal.4th at p. 166.) Aiders and abettors may still be convicted of first degree premeditated murder based on a direct theory of aiding and abetting. (*Ibid*.) "A primary rationale for punishing such aiders and abettors—to deter them from aiding or encouraging the commission of offenses—is served by holding them culpable for the perpetrator's commission of the nontarget offense of second degree murder. [Citation.]" (*Id.* at p. 165.)

After concluding the giving of the instruction on natural and probable consequences was error, the court went on to determine if the error was harmless. "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.)" (*Chiu*, *supra*, 59 Cal.4th at p. 167, quoting *People v. Guiton* (1993) 4 Cal.4th 1116, 1128–1129 (*Guiton*).) "Defendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premeditated murder. [Citation.]" (*Chiu*, at p. 167.)

The court held that the error was not harmless because the record showed the jury may have based its verdict on either theory presented by the prosecution. Based on the jury's notes during deliberations, the court found the jury may have been focused on the

8

natural and probable consequences theory of aiding and abetting, and therefore it could not conclude beyond a reasonable doubt the jury based its verdict on the alternate valid legal theory. (*Chiu*, *supra*, 59 Cal.4th at p. 168.) The court held the appropriate remedy was to allow the People to accept a reduction in the conviction to second degree murder, or to retry the first degree murder conviction under a direct aiding and abetting theory. (*Ibid.*)

## C. *The Error in Petitioner's Trial Was Prejudicial* [2]

Respondent's principal objection to the petition here is that it should be summarily denied because petitioner has failed to show that he was not guilty of first degree murder *as a matter of law*, a requirement for habeas relief generally. Respondent contends that while *Chiu* narrowed the scope of the substantive liability for the crime, it did not redefine the crime. Under these circumstances, petitioner is only " 'entitled to habeas corpus if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct. [Citations.]'. . ." (*People v. Mutch* (1971) 4 Cal.3d 389, 396 (*Mutch*), quoting *In re Zerbe* (1964) 60 Cal.2d 666, 667-668.) Thus, a petitioner must demonstrate "as a matter of law" that his conduct did not violate the statute of conviction. (*In re Earley* (1975) 14

---

[2] Respondent appears to concede that *Chiu* applies retroactively to petitioner's conviction without expressly addressing the issue. In its reply brief, respondent acknowledges: "To the extent that petitioner is arguing that his liability for first degree murder should be determined taking into account *Chiu*'s construction of the scope of that liability, we agree." (Fn. omitted.) We also agree, and based on this concession, we need not discuss at length the issue of retroactivity. We do note that the only habeas corpus case directly applying *Chiu* retroactively in that context has been accepted for review by the Supreme Court. (*In re Martinez*, review granted Sept. 11, 2015, S226596 ["The parties do not dispute that *Chiu* is retroactive and applies to this case. The decision changed the law by disapproving the use of the natural and probable consequences theory as a basis to elevate murder to first rather than second degree."].) However, in slightly different contexts courts have given retroactive effect to Supreme Court decisions effecting similar changes in substantive criminal law. (See *In re Lucero* (2011) 200 Cal.App.4th 38 (*Lucero*); *In re Hansen* (2014) 227 Cal.App.4th 906 (*Hansen*).)

Cal.3d 122, 125, superseded by statute on other grounds in *People v. Vines* (2011) 51 Cal.4th 830, 869.)

To the contrary, petitioner contends the *Chapman* beyond a reasonable doubt standard[3] is the proper standard of review. Petitioner bases his argument on recent habeas cases involving a change in the law analogous to *Chiu*. In *Lucero*, the Third District Court of Appeal found the Supreme Court's decision in *People v. Chun* (2009) 45 Cal.4th 1172 (*Chun*) dispositive. (*Lucero*, *supra*, 200 Cal.App.4th 38.) In *Chun*, the Supreme Court reconsidered the scope of the second degree felony-murder rule and expressly overturned its previous holding that shooting at an occupied vehicle could form the basis for such a conviction. (*Lucero*, at p. 41.)

In *Lucero*, the instructional error allowed the jury to reach a murder verdict without addressing the issue of malice, if it found the killing was committed in the course of a willful firearm discharge violation. (*Lucero*, *supra*, 200 Cal.App.4th at pp. 45-46.) Given the "significant" difference between a murder conviction and a voluntary manslaughter conviction, the court concluded the new rule announced in *Chun* directly affected inmates such as Lucero, who might have been acquitted of murder, but for application of the felony-murder rule. In applying the "beyond a reasonable doubt" *Chapman* test for prejudice, the *Lucero* court found the error harmless as "[n]o juror who correctly followed the instructions could arrive at a verdict of attempted murder without addressing the question of malice aforethought and resolving it against Lucero. Hence, this is a case where 'other aspects of the verdict . . . leave no reasonable doubt that the jury made the findings necessary for conscious-disregard-for-life malice . . . .' (*Chun*, *supra*, 45 Cal.45th at p. 1205.)" (*Lucero*, at p. 51.)

Similarly, in *Hansen*, Division Three of the Fourth District Court of Appeal followed *Lucero*, *supra*, 200 Cal.App.4th 38, in applying *Chun* to convictions that were already final. (*Hansen*, *supra*, 227 Cal.App.4th 906.) *Hansen* held that the *Chun* error was prejudicial under the *Chapman* standard for prejudice, where the jury is instructed on

---

[3] *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*).

10

alternative theories, one of which is legally correct and the other legally incorrect.  In such case " ' "we must reverse the conviction unless it is beyond a reasonable doubt that the error did not contribute to the jury's verdict.  [Citation.]  Such a reasonable doubt arises where, although the jury was instructed on alternate theories, there is no basis in the record for concluding that the verdict was based on a valid ground.  [Citation.]" [Citation.]'  (*People v. Calderon* (2005) 129 Cal.App.4th 1301, 1306-1307 . . . .)" (*Hansen*, at p. 921.)  Nothing in the jury's verdict in *Hansen* showed that it made the finding of malice required to support the second degree murder conviction on a valid theory of implied malice.  (*Id*. at p. 928.)

We note that respondent rejects the *Chapman* standard in favor of a standard derived from an older line of habeas cases based on lack of subject matter jurisdiction where the conduct at issue was no longer prohibited by statute.  In *Earley*, the sole issue was whether the court erred in granting habeas relief by finding that Earley's conduct did not violate section 209, kidnapping to commit robbery.  (*Earley*, *supra*, 14 Cal.3d at p. 125.)  After Earley was sentenced to kidnapping for the purpose of robbery pursuant to section 209, the Supreme Court "reinterpreted" section 209 in *People v. Daniels* (1969) 71 Cal.2d 1119 (*Daniels*).  (*Earley*, at p. 125.)  The Supreme Court held that "a defendant is entitled to habeas corpus relief under *Daniels* 'if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct.'  It is only where it appears as a matter of law that the defendant's conduct did not violate the statute under which he was convicted that the defendant is entitled to collateral relief [.]"  (*Earley*, at p. 125.)  The *Earley* court concluded that the trial court erred in finding, "as a matter of law, that Earley's conduct did not violate section 209."  (*Earley*, at p. 133.)

In *Mutch*, the Supreme Court held that the defendant was entitled to habeas corpus relief under *Daniels* if there is no material dispute as to the facts relating to the conviction and if the statute under which he was convicted did not prohibit his conduct.  (*Mutch*, *supra*, 4 Cal.3d at pp. 995-996.)

11

We conclude that the reasoning in *Lucero* and *Hansen* is more applicable here than *Earley* and *Mutch*. First, the *Lucero* and *Hansen* analysis of the retroactive effect of the *Chun* decision directly parallels the question presented here. Both *Chun* and *Chiu* represent changes in the law, not merely a narrowing of the court's interpretation of the law as advanced by respondent. The Supreme Court in *Chiu* recognized its decision presented a change in the law. (*Chiu*, 59 Cal.4th at p. 162 ["We have not previously considered how to instruct the jury on aider and abettor liability for first degree premeditated murder under the natural and probable consequences doctrine."].) Prior case law had accepted or assumed the application of the natural and probable consequences doctrine to first-degree murder liability. (E.g., *People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 297-300; *People v. Prettyman* (1996) 14 Cal.4th 248, 260-274; *People v. Garcia* (2008) 168 Cal.App.4th 261, 274; *People v. Gonzales* (2001) 87 Cal.App.4th 1, 7-11.)

Moreover, as with the similar post-*Chun* claims in *Hansen* and *Lucero*, the issue is not one " 'to review determinations of fact made upon conflicting evidence after a fair trial.' [Citations.]" (*Neal v. State of California* (1960) 55 Cal.2d 11, 23 (dis. opn. of Schauer, J.).) Rather, the error here goes to the reliability of the conviction and the question of guilt or innocence of the crime for which petitioner was convicted—first degree premeditated murder. As the Supreme Court in *Chiu* noted, there is a significant difference between first degree premeditated murder and second degree murder—a sentence of 25 years to life versus 15 years to life. (See *Chiu*, *supra*, 59 Cal.4th at p. 163.)

In contrast, *Mutch* and *Earley* only addressed insufficiency of the evidence claims and the "excess of jurisdiction" exception to the *Waltreus/Dixon* rules[4] limiting

---

[4] *In re Waltreus* (1965) 62 Cal.2d 218, 225 [petitioner precluded from raising a claim that was previously raised and rejected on appeal]; *In re Dixon* (1953) 41 Cal.2d 756, 759 [petitioner precluded from raising a claim that was not, but should have been, raised on appeal]; see *In re Harris* (1993) 5 Cal.4th 813, 829-841.)

12

relitigation of appellate claims on habeas. (*Mutch*, *supra*, 4 Cal.3d at pp. 395-396; *Earley*, *supra*, 14 Cal.3d at p. 125.)[5]

Therefore, the scope of California habeas corpus review is not so limited as respondent suggests based on *Mutch* and *Earley*. Rather, the Supreme Court's *Chiu* opinion effected a significant change in the law of aiding and abetting, eliminating the natural and probable consequences doctrine as a basis for a conviction of first degree murder. There is no question that the arguments and jury instructions allowed the jury to base its murder finding on the now-discredited theory of natural and probable consequences; accordingly, as instructed by our Supreme Court, we now turn to the question of prejudice.

In determining whether the error was harmless beyond a reasonable doubt we begin with a consideration of the basis for the jury decision. "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground. [Citations.]" (*Chiu*, *supra*, 59 Cal.4th at p. 167, quoting *Guiton*, *supra*, 4 Cal.4th at pp. 1128–1129.) "Defendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premeditated murder. [Citation.]" (*Chiu*, at p. 167.)

The court instructed the jury on all three theories and the prosecutor argued each theory. Here, the record shows the jury may have based its verdict on *any* of the three theories presented to them. In *Johnson I*, we noted the jury verdict form did not indicate which theory of guilt the jurors relied on. We stated: "Because jurors were instructed on the natural and probable consequences doctrine, and because the prosecutor highlighted this theory during his closing argument, we cannot say that jurors did not rely on the

---

**5** In a recent decision, *In re Lopez* (Apr. 6, 2016) ___ Cal.App.4th ___, 2016 Cal.App.Unpub. LEXIS 266, the Fourth District Court of Appeal followed *Mutch* and *Earley*'s excess of jurisdiction analysis, and did not address *Hansen*.

doctrine in finding defendant guilty of first degree murder." (*Johnson I*, *supra*, at \*49-51, fn. 19.)

Additionally, petitioner was charged with enhancements for personal use of a deadly weapon for using a knife and milk crate in connection with the murder. The jury did not find these allegations true. (*Johnson I*, *supra*, at \*8.) The jury's rejection of the deadly weapon enhancement supports petitioner's argument that the jury did not find him guilty of premeditated murder as the actual perpetrator of the crime but rather found him guilty under the invalid natural and probable consequences theory.[6]

Respondent argues the jury could have rejected the enhancement not because they believed petitioner did not use the milk crate in the attack, but because they believed a milk crate was not a dangerous or deadly weapon. While this is possible, the fact that the record does not demonstrate which theory the jury relied upon, means they may have focused on the invalid theory.

We, therefore, cannot conclude beyond a reasonable doubt that the jury based its verdict on the alternative valid legal theory.

## IV.

## DISPOSITION

The petition for writ of habeas corpus is granted. The judgment of conviction is vacated and the matter is remanded to the superior court. The People may elect to retry petitioner on the first degree murder conviction under a direct aiding and abetting theory. If the People do not elect to bring petitioner to trial, the trial court shall enter judgment reflecting a conviction of second degree murder and shall sentence petitioner accordingly.

---

[6] Also significant to the prejudice issue is the forensic expert's opinion that it could not be determined if the first or second beating resulted in Espinoza's death, and that he could not confirm that the knife wounds to Espinoza's neck caused his death.

14

_____
RUVOLO, P. J.

We concur:


_____
RIVERA, J.


_____
STREETER, J.

A145625, *In re Johnson on HC*

15

| | |
|---|---|
| Trial Court: | Contra Costa County Superior Court |
| Trial Judge: | Hon. Peter L. Spinetta |
| Counsel for Petitioner: | Joseph C. Shipp II, under appointment by the First District Court of Appeal, First District Appellate Project |
| Counsel for Respondent: | Kamala D. Harris<br>Attorney General of California<br><br>Gerald A. Engler<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence<br>Acting Senior Assistant Attorney General<br><br>Amit Kurlekar<br>Deputy Attorney General |

A145625, *In re Johnson on HC*