Filed 2/26/21  P. v. Johnson CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>EZEKIEL JOHNSON,<br><br>       Defendant and Appellant. | A159869<br><br>(Contra Costa County<br>Super. Ct. No. 50417568) |

In 2005, a jury convicted Ezekiel Johnson of the first degree murder of Salvador Espinoza.  (*People v. Johnson* (Apr. 29, 2009, A114514) [nonpub. opn.] (*Johnson I*).)  Although Johnson's conviction was affirmed on appeal, it was later reduced to second degree murder after a former panel of this court found that the first degree murder verdict could have been based on an invalid theory of aider and abettor liability.  (*In re Johnson* (2016) 246 Cal.App.4th 1396 (*Johnson II*).)

The present appeal arises out of Johnson's 2019 petition to vacate his second degree murder conviction and resentence him to a lesser crime pursuant to Penal Code section 1170.95.[1]  Johnson contends, and the People

---

[1]  Statutory citations are to the Penal Code, unless otherwise specified. Like the trial court, we take judicial notice of the appellate court decisions in *Johnson I* and *Johnson II*.  (Evid. Code, § 452.)

concede, that the trial court erred by finding that Johnson failed to make a prima facie case for relief.  We reverse the order summarily denying Johnson's petition and remand for further proceedings.

**BACKGROUND**

## I.  Johnson's Murder Conviction

In June 2004, Johnson was charged with the first degree murder of Espinoza (§ 187) and conspiracy to commit two other crimes (§ 182, subd. (a)(1))—sale of narcotics (Health & Saf. Code, § 11379) and assault with force likely to produce great bodily injury (§ 245, subd. (a)(1)).  The People also alleged enhancements for personally using two deadly weapons (§ 12022, subd. (b)(1)) and for committing murder for the benefit of a street gang (§ 186.22, subd. (b)(1)).

At Johnson's 2005 jury trial, the prosecution presented evidence of the following facts:  Espinoza was murdered on a street in Richmond, very near a house that belonged to a longtime member of the Sons of Death street gang. (*Johnson I*, *supra*, A114514 at pp. 2–3.)  On the night of July 24 and early morning of July 25, 2005, a group of gang members congregated on the porch of the house.  (*Id*. at p. 2.)  Johnson had been known to use this house as a place to sell drugs, but he was not present when Espinoza walked by the house and threw up a rival gang sign.  The group on the porch contemplated killing Espinoza but decided to beat him instead.  (*Id.* at p. 3.)  Espinoza tried to flee, but gang members kicked and hit him repeatedly until he lost consciousness.  (*Ibid.*)

According to the trial evidence, Johnson arrived at the house after the gang attacked Espinoza.  (*Johnson I, supra,* A114514 at p. 3.)  When he heard about what happened, Johnson said he wanted to kill Espinoza.  Then Johnson and some of the gang members approached Espinoza, who was still

2

unconscious, and assaulted him a second time. Johnson asked for a gun to shoot Espinoza, but nobody had one, so Johnson picked up a nearby milk crate, put it over the victim's head and neck, and proceeded to jump on it at least twice. Johnson pulled out a knife and stabbed Espinoza in the neck while directing another assailant to do the same. Afterward, Johnson went into the house and washed his hands with bleach. (*Id.* at p. 4.)

At trial, the prosecution argued that Johnson was the actual perpetrator of premeditated and deliberate murder because he stated he wanted to kill the victim before participating in a deadly assault. (*Johnson I*, *supra*, A114514 at p. 4.) The People also proposed two alternative theories that were based on the natural and probable consequences doctrine. They argued that Johnson either aided and abetted an assault or joined a conspiracy to assault Espinoza, and that murder was a natural and probable consequence of either crime. These alternative theories were consistent with the forensic evidence; a pathologist testified that it was not clear whether the first or second beating caused Espinoza's death but that the evidence established that he died from blunt force trauma to the head, not from the stab wounds to his neck. (*Id.* at pp. 4–5.)

On November 17, 2005, the jury convicted Johnson of first degree murder and conspiracy to commit a felony assault. The jury also found the gang enhancement allegation was true, but it found that the two allegations that Johnson personally used a deadly weapon were not true. The court imposed an aggregate sentence of 36 years to life in state prison. Johnson appealed, and in *Johnson I*, another panel of this court affirmed Johnson's convictions, although it struck the 10-year gang enhancement. (*Johnson I*, *supra*, A114514 at p. 71.)

3

In 2009, Johnson filed a petition for writ of habeas corpus seeking to vacate his murder conviction pursuant to *People v. Chiu* (2014) 59 Cal.4th 155, which holds that an "aider and abettor may not be convicted of first degree premediated murder under the natural and probable consequences doctrine." (*Id.* at p. 159.) A panel of this court granted Johnson's petition, finding there was "no question" the jury could have based "its murder finding on the now-discredited theory of natural and probable consequences." (*Johnson II, supra,* 246 Cal.App.4th at p. 1407.) Johnson's conviction was reversed, and after the matter was remanded, the district attorney elected to accept a conviction of second degree murder rather than retry Johnson for first degree murder. Consequently, Johnson was resentenced to a prison term of 15 years to life.

## II.  Senate Bill No. 1437

In 2019, the California Legislature enacted Senate Bill 1437, which amended the felony murder rule and the natural and probable consequences doctrine as it relates to murder. (Stats. 2018, ch. 1015, §§ 1–3; see *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.) On appeal, Johnson concedes his conviction is not affected by changes to the felony murder rule. Therefore, we focus on the natural and probable consequences doctrine.

Senate Bill No. 1437 amended the statutory definition of malice in section 188 to provide that, except in cases governed by the felony murder rule, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The effect of this amendment is that a defendant may no longer be "convicted of second degree murder under a theory that the defendant aided and abetted a

crime, the natural and probable consequence of which was murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 843.)

Senate Bill No. 1437 also enacted section 1170.95, a remedy whereby persons previously "convicted of felony murder or murder under a natural and probable consequences theory" may file a petition to have their "murder conviction vacated and to be resentenced on any remaining counts." (§ 1170.95, subd. (a).) As relevant here, a petitioner qualifies for this relief if the following conditions are met: (1) the charges filed against the petitioner allowed the prosecution to proceed on a theory of "murder under the natural and probable consequences doctrine"; (2) the petitioner was "convicted of first degree or second degree murder following a trial"; and (3) the petitioner "could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

Once a petition is filed, the trial court must determine whether the defendant has made a prima facie showing of entitlement to relief. If so, it issues an order to show cause. (§ 1170.95, subd. (c).) The court then holds an evidentiary hearing to determine whether the murder conviction should be vacated. (§ 1170.95, subd. (d).)

## III. Johnson's Section 1170.95 Petition

On March 14, 2019, Johnson filed a petition to vacate his murder conviction under section 1170.95. Johnson alleged that he was not the person who actually killed Espinoza and that his murder conviction could have been based on the natural and probable consequences doctrine. Johnson alleged further that he could not now be convicted of murder because the record of his conviction does not compel the conclusion that he was the actual killer or that he acted with intent to kill, as required under the revised section 188.

5

The trial court appointed counsel to represent Johnson, who filed a brief in support of the resentencing petition and requested an order to show cause. The People opposed the petition, arguing that Johnson is not entitled to relief under section 1170.95 because he could still be convicted of second degree murder under current law.

On December 16, 2019, the trial court summarily denied Johnson's petition. As a preliminary matter, the court found that the petition was facially sufficient because Johnson alleged legal grounds for securing relief under section 1170.95. Nevertheless, the court concluded that Johnson did not make a prima facie showing of eligibility for relief because he "fail[ed] to detail what if any material facts are in dispute" that would prevent him from being convicted of second degree murder under current law. In reaching this conclusion, the trial court acknowledged there is a factual dispute about whether the first or second beating caused Espinoza's death, and that there is a possibility Johnson's conviction was based on the natural and probable consequences doctrine. However, in the trial court's view, these circumstances are not dispositive because they do not establish that Johnson cannot be convicted of second degree under a "still-viable" theory.

After considering the record and weighing the facts summarized in *Johnson I* and *Johnson II*, the trial court was "satisfied that a reasonable jury could find that Johnson's actions of kicking and beating Espinoza and jumping on his neck as he lay unresponsive on the ground constituted implied malice and that his actions were a proximate cause of death." Relying on this evidence, the court found that Johnson failed to make a prima facie case for relief because his second degree murder conviction could be based on the valid theory that he was a principal in the commission of Espinoza's murder and that he acted with either express or implied malice.

6

Johnson contends the trial court erred in summarily denying his petition without issuing an order to show cause and conducting an evidentiary hearing. Conceding the error, the People posit that the trial court misconstrued the requirement in section 1170.95 that the petitioner state a prima facie case for relief. Because this issue of statutory interpretation presents a question of law, our review is de novo. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) Applying this standard, we find that the trial court erred.

Johnson filed a petition which, on its face, met the three required conditions for relief under section 1170.95, subdivision (a). Further, the record of Johnson's conviction does not conclusively refute his material allegations: that (1) he was convicted of murder, (2) the jury based its verdict on the natural and probable consequences theory, and (3) he could not currently be convicted of murder under section 188. Crucially, the jury was not required to find that Johnson was the actual killer of Espinoza or intended his death in order to find him guilty of murder. As the *Johnson II* court concluded, the fact that the jury rejected two deadly weapon enhancement allegations shows that Johnson may have been convicted of murder under a natural and probable consequences theory. (*Johnson II, supra,* 246 Cal.App.4th at p. 1408.) Thus, Johnson has stated a prima facie case for relief under section 1170.95.

The trial court summarily denied Johnson's petition despite finding a legal argument for granting relief under section 1170.95 because the court evaluated the trial evidence and found that it weighed in favor of convicting Johnson of murder. This was error. It may be true that a trial court need not issue an order to show cause where the record shows that the petitioner is

7

ineligible for relief as a matter of law. (See *People v. Lee* (2020) 49 Cal.App.5th 254, 257–258, review granted Jul. 15, 2020, S262459; *People v. Edwards* (2020) 48 Cal.App.5th 666, 669, review granted Jul. 8, 2020, S262481.) But when assessing whether a petitioner has made a prima facie showing, "the trial court should accept the assertions in the petition as true unless facts in the record *conclusively refute them as a matter of law*." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 968 (*Drayton*), italics added.)

*Drayton* involved a petition to vacate a 1992 conviction by plea for a murder that occurred during the course of a robbery. (*Drayton, supra,* 47 Cal.App.5th at pp. 968–969.) The petitioner alleged he was entitled to relief under section 1170.95 because he could no longer be convicted of murder due to changes to the felony murder rule. (*Id.* at pp. 969–970.) The People opposed the petition, disputing that the petitioner "was not a major participant in the robbery who acted with reckless indifference to human life." (*Id.* at p. 981.) Drawing on testimony from the preliminary hearing, the trial court agreed with the People and summarily denied the petition without issuing an order to show cause. (*Id.* at 982.) Reversing the order on appeal, the *Drayton* court held that "the trial court should not have engaged in this factfinding without first issuing an order to show cause," and that "the trial court should not have evaluated and weighed the evidence but instead should have accepted petitioner's asserted facts as true." (*Ibid.*)

Here, as in *Drayton*, the trial court engaged in improper factfinding at the prima facie stage. The court acknowledged that the forensic pathologist could not determine if the first or second beating caused Espinoza's death, but it decided to credit evidence that would support findings that Johnson was the actual killer and that he acted with malice. This factfinding should

8

not have been conducted without first issuing an order to show cause and conducting a full evidentiary hearing.

We recognize that at least one court has approved the summary denial of a section 1170.95 petition based on a substantial evidence review of the record of conviction. (*People v. Garcia* (2020) 57 Cal.App.5th 100, 108, review granted Feb. 10, 2021, S265692 (*Garcia*).) *Garcia* explicitly disagrees with *Drayton* on the ground that the *Drayton* court "failed to take into consideration the substantial evidence test." (*Garcia*, at p. 116.) According to *Garcia*, a trial court may summarily deny a section 1170.95 petition even when the petitioner's assertions are not " 'conclusively refut[ed]…as a matter of law' " if substantial evidence in the record "supports a murder conviction under current law." (*Garcia*, at p. 116.) We decline to follow *Garcia* because we are not persuaded that substantial evidence is the proper standard for denying a section 1170 petition at the prima facia stage.

*Garcia* cites *People v. Duke* (2020) 55 Cal.App.5th 113, review granted Jan. 13, 2021, S265309, as authority for using the substantial evidence test to summarily deny a section 1170.95 petition. *Duke*, however, involved a section 1170.95 petition that was denied after the trial court conducted a full evidentiary hearing. (*Duke,* at p. 119.) An evidentiary hearing conducted under section 1170.95, subdivision (d) is separate from, and occurs after, the prima facie showing required under section 1170.95, subdivision (c). At the evidentiary hearing, the prosecution must prove beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d).) Several courts have explicitly disagreed with *Duke's* application of the

9

substantial evidence test at the evidentiary hearing,[2] but even *Duke* does not advocate conducting a substantial evidence review at the prima facie stage.

As the *Drayton* court explained, the prima facie review required by section 1170.95, subdivision (c) is analogous to the preliminary stage of a habeas corpus proceeding. (*Drayton, supra,* 47 Cal.App.5th at p. 977; see also *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493.) "When . . . a habeas corpus petition is sufficient on its face (that is, the petition states a prima facie case on a claim that is not procedurally barred), the court is obligated by statute to issue a writ of habeas corpus." (*People v. Romero* (1994) 8 Cal.4th 728, 737.) By parity of reasoning, when a section 1170.95 petition is sufficient on its face to state a claim for relief, the trial court should issue an order to show cause and hold an evidentiary hearing before resolving conflicts in the factual evidence.

Our conclusion is reinforced by cases addressing the requirements for securing resentencing of a prior conviction under Proposition 47 pursuant to section 1170.18.[3] The trial court should not "consider any factual issues" when determining whether the applicant has presented a prima facie case for relief under section 1170.18. (*People v. Washington* (2018) 23 Cal.App.5th

---

[2] For example, *People v. Lopez* (2020) 56 Cal.App.5th 936, review granted February 10, 2021, S265974, holds that section 1170.95, subdivision (d)(3) requires "the prosecutor to prove beyond a reasonable doubt each element of first or second degree murder under current law in order to establish ineligibility." (*Lopez*, at p. 949; see also *People v. Rodriquez* (2020) 58 Cal.App.5th 227 [error to use substantial evidence standard at a section 1170.95, subd. (d)(3) hearing].)

[3] In a different context, the California Supreme Court has analogized Proposition 47 to Senate Bill 1437. (*People v. Gentile, supra,* 10 Cal.5th at pp. 852–853 [holding that Senate Bill 1437, like Proposition 47, creates a specific mechanism for relief and therefore does not apply retroactively to cases on direct review].)

948, 953.)  And an evidentiary hearing is required when "there is a reasonable likelihood that the petitioner may be entitled to relief and the petitioner's entitlement to relief depends on the resolution of an issue of fact." (*People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095.)

We conclude that Johnson did make out a prima facie case for relief by pleading facts that, when taken as true, entitle him to relief.  This does not mean Johnson will secure relief, only that he has met his initial, prima facie burden.  An order to show cause will determine whether Johnson is, in fact, entitled to resentencing.

## DISPOSITION

The order denying Johnson's section 1170.95 petition is reversed.  The matter is remanded to the superior court with directions to issue an order to show cause and hold an evidentiary hearing on Johnson's petition.


TUCHER, J.

WE CONCUR:

STREETER, Acting P. J.
BROWN, J.

*People v. Johnson* (A159869)

11