Filed 3/3/25  P. v. Wilson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENISE MAE WILSON,<br><br>    Defendant and Appellant. | A166666<br><br>(Contra Costa County<br>Super. Ct. No. 04001999432) |

A jury convicted Denise Mae Wilson of arson.  The trial court placed Wilson on formal probation for two years.  Wilson maintains there was insufficient evidence to support her arson conviction.  She further contends the court erred in instructing the jury on aiding and abetting without evidence to support those instructions.  Lastly, she agrees with the People that a remand for resentencing is warranted.  We agree a remand is appropriate to permit the trial court to clarify its sentence.  In all other respects, we affirm the judgment.

## I. BACKGROUND

### A. *The Arson*

In April 2020, Wilson's boyfriend, Idrees Hollis, was staying with his ex-girlfriend, Tanisha Gilmore, after he and Wilson had a falling out.

Around 1:40 a.m. on April 15, 2020, Gilmore heard banging at her front door and someone yelling for Hollis to open the door. She recognized the voice as Wilson's voice. She looked out her window and saw Wilson with another woman, whom she did not recognize. Afraid that the two women would break her windows, Gilmore called the police. She then heard someone say, " 'Oh, so you're not going to open the door,' " and it was "quiet for a minute."

After a while, Gilmore saw lights outside, and she thought it was the police. She instead found her van on fire. She did not see Wilson outside at that point.

Gilmore's neighbor was woken up by the banging on Gilmore's door. She saw two women "peeking" in a van parked in front of Gilmore's house. The neighbor heard the women shout, " 'Come out the house, B. We know you in there so you might as well come out. You must be scared because you ain't came out by now, so come on out.' " The neighbor could not see the women's faces because it was dark.

Eventually, the two women left, but the neighbor heard them return a little later. She saw them peer into Gilmore's windows before walking to Gilmore's van. They opened the van's front passenger door, "took some clothes out or something," and "roam[ed] through [the van]." And "all of a sudden," the neighbor saw "some flickering, and then . . . like a flash of light," and flames "quickly went up." The women then "rac[ed] down the street" and left in a car.

Later that day or the following day, Wilson left a voicemail for Gilmore saying, "You aint finna do a mother fucking thing bitch but get knocked out. Bitch you wanted these problems, bitch. You already knew . . . it was going to be a problem with me bitch when you came and picked up my nigga."

A fire investigator testified that an ignitable liquid or accelerant was likely used to start the fire, and it was poured over the top of the front passenger seat.

Approximately 15 minutes before Gilmore's first call to the police, a car registered to Wilson was scanned by automated license plate reading cameras en route to Gilmore's house. Wilson denied driving to Gilmore's house and setting fire to her van, and she claimed her and Hollis broke up in the month prior to the incident.

## B. Relevant Procedural History

Wilson was charged with one felony count of arson. (Pen. Code, § 451, subd. (d).) It was also alleged that three aggravating circumstances applied to the arson charge.

The trial court's jury instructions included an instruction on aiding and abetting pursuant to CALCRIM No. 401. The jury returned a guilty verdict and found true two of the aggravating circumstances. The court suspended execution of sentence and placed Wilson on formal probation.

## II. DISCUSSION

## A. Sufficiency of the Evidence

Wilson argues the record contains insufficient evidence to convict her of arson as either the direct perpetrator or as an aider and abettor. As we will explain, we need not determine whether there is sufficient evidence to support Wilson's arson conviction on a direct perpetrator theory because the evidence was sufficient to establish beyond a reasonable doubt that Wilson's conduct assisted in the commission of the arson.[1]

---

[1] To the extent the evidence is insufficient to support a direct perpetrator theory, we affirm unless a review of the entire record affirmatively demonstrates a reasonable probability that the jury in fact

3

### 1. *Legal Principles and Standard of Review*

In reviewing claims of insufficient evidence, we " ' " " 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419, called into doubt on another ground by *People v. Johnson* (2012) 53 Cal.4th 519, 527–528.) "We presume ' "in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." [Citation.] This standard applies whether direct or circumstantial evidence is involved.' " (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.)

"Under California law, a person who aids and abets the commission of a crime is a 'principal' in the crime, and thus shares the guilt of the actual perpetrator." (*People v. Prettyman* (1996) 14 Cal.4th 248, 259, superseded by statute on other grounds as stated in *People v. Lopez* (2023) 88 Cal.App.5th 566, 575.) "[P]roof of aider and abettor liability requires proof in three distinct areas: (a) the direct perpetrator's actus reus—a crime committed by the direct perpetrator, (b) the aider and abettor's mens rea—knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) the aider and abettor's actus reus—conduct by the aider and abettor that in fact assists the achievement of the crime." (*People*

---

relied on the unsupported theory. (*People v. Perez* (2005) 35 Cal.4th 1219, 1233.) Wilson does not argue that the verdict actually rested on a direct perpetrator theory. We therefore presume the record does not affirmatively demonstrate that the jury relied on a direct perpetrator theory in convicting Wilson of arson. (See *Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 [burden on appellant to affirmatively demonstrate error].)

*v. Perez, supra*, 35 Cal.4th at p. 1225.)  The test is "whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." (*People v. Villa* (1957) 156 Cal.App.2d 128, 134.)

### 2. Analysis

Wilson acknowledges there was evidence showing she was present at the scene of the crime with another woman when the fire started.  Nor does she dispute that the jury could have reasonably inferred from the evidence that one of the two women set Gilmore's van on fire, even though no one was able to say who actually started the fire.  Wilson contends, however, that there was no evidence of the aider and abettor's actus reus because "there was no testimony that one [woman] handed the other any item, or said any encouraging words, or provided any service other than her presence."

While it is true that " '[m]ere presence at the scene of a crime' " and the failure to prevent a crime alone are insufficient to constitute aiding and abetting, " 'these are factors the jury may consider in assessing a defendant's criminal responsibility.' " (*People v. Garcia* (2008) 168 Cal.App.4th 261, 272–273, abrogated on other grounds as stated in *In re Johnson* (2016) 246 Cal.App.4th 1396, 1406.)  Other factors which may be considered in determining aiding and abetting include " 'companionship, flight, and conduct before and after the crime' " (*Garcia*, at p. 273), and the defendant's motive. (See *People v. Lopez* (2013) 56 Cal.4th 1028, 1070, abrogated on another ground by *People v. Rangel* (2016) 62 Cal.4th 1192, 1216.)  Such factors may support an inference that the accused in fact " ' "aided the perpetrator by acts *or* encouraged [her] by words or gestures." ' " (*People v. Campbell* (1994) 25 Cal.App.4th 402, 411, 409, italics added.)

All these factors are present here.  To begin with, the evidence shows Wilson had a strong motive for the arson, which was to retaliate against

5

Gilmore out of romantic jealousy. This motive was demonstrated by Wilson's conduct immediately before and after the arson. There was testimony that prior to Gilmore's van being set on fire, Wilson was banging on Gilmore's door and yelling for Hollis to come outside. And Gilmore received a voicemail from Wilson not more than a day after the arson suggesting that Gilmore deserved "these problems" because she let Hollis stay with her. Such conduct supports a finding that Wilson's actions during the arson were intended to assist in the commission of the arson. (See *People v. Campbell, supra,* 25 Cal.App.4th at p. 410.)

There was also strong evidence of Wilson's companionship with the other woman present at the scene of the crime and of her active involvement in the planning and execution of the arson. The testimony of Gilmore and her neighbor supports findings that both Wilson and the other woman were banging on Gilmore's door prior to the arson, and Gilmore's neighbor saw the two women peeking into Gilmore's van. The same testimony shows that the two women left together after realizing Gilmore would not open her door and then returned to Gilmore's house together a little later. Upon returning, they "roam[ed]" through the van "for a while" before it was set on fire. Evidence of an accelerant or ignitable fluid on the passenger seat supported expert opinion the fire was set intentionally. The jury could have reasonably inferred from this evidence that the two women were acting in concert to carry out a common plan of retaliation. (See *In re Gary F.* (2014) 226 Cal.App.4th 1076, 1081 [jury could infer from evidence that "the boys were companions acting in concert according to a common plan"]; *People v. Garcia, supra,* 168 Cal.App.4th at p. 274 [defendant's companionship with shooter and his presence and actions at the scene of the crime supported a

finding that he encouraged the shooting]; *People v. Campbell, supra,* 25 Cal.App.4th at pp. 409–410.)

Wilson's conduct in fleeing the scene with her companion after the fire was started without calling for help further supports a finding that she took affirmative action to encourage and promote the commission of arson. (See *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1095 [fleeing with perpetrator supported inference of shared criminal intent]; but see *In re K.M.* (2022) 75 Cal.App.5th 323, 330 [flight alone does not establish aiding and abetting].)

The fact that no witness was able to say who started the fire or testified that one woman "handed the other any item, or said any encouraging words" does not preclude a finding that Wilson encouraged the commission of arson. "[A] sharp line does not always exist between the direct perpetrator and the aider and abettor: '. . . . When two or more persons commit a crime together, both may act in part as the actual perpetrator and in part as the aider and abettor of the other.'" (*People v. Thompson* (2010) 49 Cal.4th 79, 117–118, italics omitted.) As such, the aider and abettor doctrine "obviates the necessity to decide who was the aider and abettor and who the direct perpetrator or to what extent each played which role." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1120.)

Viewing the evidence collectively and in the light most favorable to affirming the judgment, we conclude substantial evidence supported a finding beyond a reasonable doubt that Wilson was not just an innocent bystander but instead "played an affirmative supportive role" in the arson.[2] (See *People v. Campbell, supra,* 25 Cal.App.4th at pp. 410, 409.) The verdict thus stands.

---

[2] Wilson cites *People v. Perez, supra,* 35 Cal.4th at page 1225, in support of her contention that her liability for aiding and abetting a crime requires "conduct by the aider and abettor that in fact assists the

7

### B. Ineffective Assistance of Counsel

Wilson contends there was no evidence to support an aiding and abetting instruction. Anticipating forfeiture for her trial counsel's failure to object to the instruction, she argues her counsel rendered ineffective assistance of counsel. We disagree.

A jury instruction is warranted if supported by substantial evidence. (*People v. Larsen* (2012) 205 Cal.App.4th 810, 823.) For the same reasons we find there was substantial evidence to support the arson verdict, we conclude the aiding and abetting instruction was supported by substantial evidence. (See *People v. Thompson*, *supra*, 49 Cal.4th at p. 120 [rejecting defendant's claim that insufficient evidence supported an aiding and abetting instruction where the evidence supported his conviction on an aider and abettor theory].) Therefore, an objection to the instruction would have been futile. Wilson's ineffective assistance of counsel claim thus fails because "[c]ounsel is not ineffective for failing to make frivolous or futile motions." (*Id.* at p. 122; see *People v. Cudjo* (1993) 6 Cal.4th 585, 616 [where there is no sound legal basis for objection, counsel's failure to object cannot establish ineffective assistance].)

### C. Remand for Resentencing

Lastly, the People urge us to remand for resentencing because the trial court, in granting Wilson probation, suspended execution of sentence but never actually imposed a sentence. Under Penal Code section 1203.1, subdivision (a), the trial court must either suspend imposition of sentence or

---

achievement of the crime." (*Ibid.*) Nothing in that case is contrary to the law set forth above regarding the standard for establishing the aider and abettor's actus reus.

select a sentence and suspend execution of sentence.  (See *People v. Howard* (1997) 16 Cal.4th 1081, 1084.)

Here, the trial court orally pronounced at sentencing that the "execution" of sentence was suspended for 364 days, but it did not select a sentence.  The minute order for the sentencing hearing adds to the confusion because the boxes for suspending "imposition" of sentence and for suspending "execution" of sentence are both checked in the order.  Wilson agrees that remand for resentencing is appropriate here to clarify her sentence.  We will therefore remand the matter to permit the court to clarify Wilson's sentence.  (See *People v. Clancey* (2013) 56 Cal.4th 562, 578 [where record was ambiguous as to the sentence imposed, "the proper remedy is a conditional reversal with directions to the trial court on remand to resolve the ambiguity"].)

## III.   DISPOSITION

The matter is remanded with directions to the trial court to clarify the sentence.  In all other respects, the judgment is affirmed.

9

LANGHORNE WILSON, J.

WE CONCUR:

BANKE, ACTING P. J.

SMILEY, J.

A166666
*People v. Wilson*